ADVOCATES FOR FAITH & FREEDOM
Mariah R. Gondeiro (SBN 323683)
mgondeiro@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone: (951) 304-7583

Attorneys for Plaintiff **Jessica Tapia**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESSICA TAPIA**, an individual;<br><br>Plaintiff,<br><br>v.<br><br>**JURUPA UNIFIED SCHOOL DISTRICT**; **TRENTON HANSEN**, both in his personal capacity and in his official capacity as the Jurupa Unified School District Superintendent; **DANIEL BROOKS**, both in his personal capacity and in his official capacity as Jurupa Unified School District Assistant Superintendent;<br><br>Defendants. | Case No.: 5:23-cv-00789-FMO-E<br><br>**FIRST AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES:**<br><br>1) **DEPRIVATION OF THE FREE EXERCISE OF RELIGION**<br>2) **DEPRIVATION OF THE FREEDOM OF SPEECH**<br>3) **VIOLATION OF THE DUE PROCESS CLAUSE**<br>4) **VIOLATION OF CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT**<br>5) **VIOLATION OF TITLE VII**<br>6) **FIRST AMENDMENT RETALIATION** |

## INTRODUCTION

1.    This Action brings facial and as applied constitutional challenges to a number of directives the Jurupa Unified School District ("JUSD" or "the District") required Plaintiff Jessica Tapia ("Ms. Tapia") to comply with to maintain her career as a physical education teacher.

2.    For over two decades, Ms. Tapia has been a beloved and involved member of the JUSD as a student, teacher, and coach. She has invested her entire career into encouraging, loving, and mentoring her students. Students, parents, and faculty have often highlighted her exemplary teaching abilities. Her performance reviews even referred to her as a "distinguished" teacher.

3.    But on September 30, 2022, Ms. Tapia was blindsided when the District gave her a Notice of Unprofessional Conduct and notified her that pursuant to California Education Code section 44938, she had engaged in unprofessional conduct. JUSD issued twelve meritless allegations against Ms. Tapia.

4.    Among the allegations, the District accused Ms. Tapia of posting offensive content on her public Instagram account, referencing her faith during conversations with students, and expressing controversial opinions on issues pertaining to gender identity.

5.    Following the Notice of Unprofessional Conduct, the District presented Ms. Tapia with a "A Plan of Assistance and Directives." The directives required Ms. Tapia lie to parents about their children's gender identity, refer to students by their preferred pronouns, refrain from expressing her religious beliefs with students or on her social media, and allow students to use the bathroom or locker room that matched their preferred sex.

6.    Because Ms. Tapia was unable to comply with the directives due to her religious beliefs, she requested an accommodation from the District. JUSD refused to provide her with any accommodation and subsequently terminated her employment with the District.

FIRST AMENDED VERIFIED COMPLAINT

7.   JUSD's actions violate Ms. Tapia's First Amendment rights to free exercise and free speech, as well as her rights under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of religion.

8.   Ms. Tapia brings this Complaint to vindicate her constitutional and civil rights to act in accordance with her sincerely held religious beliefs.

## PARTIES - PLAINTIFF

9.   Plaintiff JESSICA TAPIA resides in Riverside County, California.

## PARTIES - DEFENDANT

10.   Defendant JURUPA UNIFIED SCHOOL DISTRICT is a school district in Riverside County, California.

11.   Defendant TRENTON HANSEN is the Jurupa Unified School District Superintendent. Defendant Hansen is responsible for adopting and implementing JUSD's policies and practices challenged in this lawsuit. He is sued in both his official and personal capacities for both implementing and adopting the challenged policies and practices and refusing to extend an exemption or accommodation to Plaintiff.

12.   Defendant DANIEL BROOKS is the Jurupa Unified School District Assistant Superintendent. Defendant Brooks is responsible for adopting and implementing JUSD's policies and practices challenged in this lawsuit. He is sued in both his official and personal capacities for both implementing and adopting the challenged policies and practices and refusing to extend an exemption or accommodation to Plaintiff.

## JURISDICTION AND VENUE

13.   This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

14.   This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

15.     This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

16.     This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

### A. Ms. Tapia's Background and Employment History

18.     After her own formative experience at Jurupa Valley High School as a student, Ms. Tapia developed a strong desire to teach and mentor students at JUSD. Her passion for both teaching and sports led Ms. Tapia to pursue a physical education teaching position at the high school.

19.     Since 2014, Ms. Tapia has worked for JUSD in varying capacities.

20.     From 2014 to 2016, Ms. Tapia served as a resident substitute teacher at Jurupa Valley High School, teaching various subjects.

21.     In 2015, while working toward her teaching credentials, Ms. Tapia began student teaching a physical education ("P.E.") class and coaching the girls' basketball and softball teams at Jurupa Valley High School.

22.     In 2016, after earning her teaching credential, Ms. Tapia accepted a full-time teaching position at Jurupa Valley High School in the Agricultural Department. She accepted the position with the mutual understanding between her and the District, that should a P.E. position open, the District would transfer her to that position.

23.    In 2017, the District informed Ms. Tapia of an available P.E. position at Mira Loma Middle School, the same middle school she attended as a student.

24.    From 2017 to 2021, Ms. Tapia taught P.E. at the middle school. While there, the principal noted that Ms. Tapia "distinguished herself among the rest by always focusing on her student's mind, body and heart….She is a caring, positive, kind, student-centered teacher that has motivated her students to excel in ways that are unconventional." A true and correct copy of a letter sent by Principal Mary Boules is attached hereto as Exhibit A.

25.    The principal further emphasized that "[h]er students absolutely 'love' her and when you interact with Mrs. Tapia it is very clear and easy to see exactly why. Her positive attitude and high expectations make her students believe in themselves and therefore strive to achieve their potential." *Id.*

26.    In 2021, Ms. Tapia transferred back to Jurupa Valley High School and began working as the sole female P.E. teacher at the high school.

27.    Ms. Tapia has received positive performance evaluations, which confirm that she "encourages the students to give their best effort in the learning of new activities and drills." A true and correct copy of the JUSD performance evaluation is attached hereto as Exhibit B.

28.    Her performance evaluations also state that Ms. Tapia "has a calm and caring demeanor for her students" and is an "asset to the PE department and to the students she teachers." *Id.*

**B. Ms. Tapia's Religious Beliefs**

29.    As a Christian, Ms. Tapia believes that God defines human sexuality, and that men and women are created in the image of God. Her religion also holds that God created two sexes: male and female.

30.    As a result of her faith, Ms. Tapia also believes that all students, regardless of sexual orientation, race, or gender, should be treated with respect, kindness, and love. But her faith precludes her from endorsing policies that cause

ADVOCATES
FOR FAITH & FREEDOM

1  her to reject her faith, such as facilitating a student's gender transition or withholding

2  information about it from the student's parents.

3      31.    Ms. Tapia believes that the relationship between parents and children

4  was created by God, and God requires parents to "train up a child in the way he

5  should go; even when he is old he will not depart from it." Proverbs 22:6.

6      32.    Ms. Tapia has never proselytized, nor has she discussed her religious

7  beliefs with students unless they have approached her and asked her questions about

8  her faith.

9      33.    As an employee of JUSD, Ms. Tapia, at times, allowed students to listen

10 to any music or podcast of their choosing during her P.E. classes. Ms. Tapia would

11 often listen to worship music during this time from her phone, but she kept the sound

12 levels at a minimum in case any of her students needed to get her attention.

13     34.    Ms. Tapia has regularly posted quotes, Bible verses, and her religious

14 beliefs regarding cultural issues on her personal social media pages without any

15 issues. She does not identify herself as a teacher or an employee of the District on

16 her social media pages. She does not indicate that her beliefs or opinions are

17 representative of the District's.

18 **C. JUSD's Allegations and Directives**

19     35.    Two days before the end of the 2021-2022 school year, Ms. Tapia

20 received disturbing messages and comments on her personal Instagram account from

21 alleged Jurupa Valley High School students.

22     36.    When she came to school the next day after receiving these messages

23 and comments, during third period, one of the high school principals pulled her out

24 of the classroom and told her she needed to meet with Assistant Superintendent of

25 Human Resources Daniel Brooks ("Mr. Brooks).

26     37.    Mr. Brooks informed Ms. Tapia that some issues had been brought to

27 the District's attention regarding her personal social media posts. Mr. Brooks told

28 Ms. Tapia that she would be placed on paid administrative leave and that she would



ADVOCATES
FOR FAITH & FREEDOM

1   need to leave the school campus until further notice.

2       38.   On July 29, 2022, Mr. Brooks, as authorized by Superintendent Trenton

3   Hansen, sent Ms. Tapia numerous, unfounded allegations the District was in receipt

4   of and asked her to respond to them as part of an internal investigation.

5       39.   The allegations, in part, were premised on social media posts Ms. Tapia

6   made on her personal Instagram account.

7       40.   The District claimed, as allegedly supported by students, that Ms.

8   Tapia's social media posts were racist, offensive, disrespectful, and mocking

9   towards individuals based upon their sexual orientation.

10      41.   These allegations were a mischaracterization of who Ms. Tapia is. Ms.

11  Tapia's faith requires her to love all people, regardless of sexual orientation, race, or

12  gender.

13      42.   In fact, Ms. Tapia has been adored by students and parents throughout

14  her teaching career because she invests time into mentoring and caring for each

15  student in her classroom.

16      43.   Ms. Tapia is unabashed about her faith, though, and shares her religious

17  beliefs on issues such as marriage, sexual orientation, and transgenderism. Her

18  beliefs are based upon the Bible.

19      44.   JUSD also accused Ms. Tapia of proselytizing during P.E. class.

20      45.   Again, Ms. Tapia does not force her beliefs upon others. She has

21  provided information related to her faith when asked by students.

22      46.   The District also accused Ms. Tapia of not calling a student by the

23  student's preferred pronoun.

24      47.   Ms. Tapia has never been asked to refer to students by their preferred

25  pronouns and has never referred to students by their preferred pronouns in the past,

26  and it was not an issue until JUSD became aware of her beliefs on social media. Ms.

27  Tapia's refusal to refer to a student's preferred pronoun did not create a hostile

28  environment or disrupt her classroom.

ADVOCATES
FOR FAITH & FREEDOM

48.     The District did not discipline or call in for questioning other teachers who were expressing their political and religious beliefs on their social media pages during the same time of the accusations levied against Ms. Tapia.

49.     On or about August 15, 2022, John Vigrass ("Mr. Vigrass"), Ms. Tapia's union representative, submitted a response to the District's allegations on behalf of Ms. Tapia categorically denying any wrongdoing.

50.     In this response, Mr. Vigrass warned the District that "[s]ubjecting employees to a political or social litmus test and proposing to discipline them for off-duty, legally protected speech has historically proven to be unwise."

51.     Mr. Vigrass reiterated that Ms. Tapia "on her own time with her own resources [] posted content."

52.     On or about September 30, 2022, Ms. Tapia attended a meeting with District representatives during which she received a Notice of Unprofessional Conduct ("Notice") signed by Mr. Brooks. On information and belief, Mr. Hansen authorized this letter.

53.     JUSD advised Ms. Tapia that while the Notice was being issued pursuant to Education Code section 44938 for unprofessional conduct, her "conduct may also constitute other violations of Education Code section 44932, such as evident unfitness for service, immoral conduct, and/or persistent violation of or refusal to obey the school laws of the state and reasonable regulations of the District's School Board."

54.     The District improperly concluded Ms. Tapia violated the California Education Code section 220 and CDE Board Policies 5145.3, 5145.9, and 4119.21 ("Board Policies").

55.     CDE Board Policy 5145.3 protects against discrimination and harassment.

56.     CDE Board Policy 5145.9 requires school districts to provide "a respectful, inclusive, and safe learning environment that protects students from

discrimination, harassment, intimidation, bullying or any other type of behavior that is motivated by hate."

57.    The District also reminded Ms. Tapia of Board Policy 4119.21, Code of Ethics of the Education Profession, which states in relevant part: "The educator, believing in the worth and dignity of each human being recognizes the supreme importance of the pursuit of truth, devotion to excellence, and the nurturing of demographic principles. Essential to these goals is the protection of freedom to learn and to teach and the guarantee of equal educational opportunity for all."

58.    JUSD also concluded, without any merit, that Ms. Tapia's conduct "demonstrate[d] a lack of good behavior and judgment."

59.    To "cure" her "deficiencies," the District directed Ms. Tapia to refer to students by their preferred gender pronouns; refrain from publicly posting her faith and opinions on social media; and refrain from discussing her religious beliefs or the Bible with students.

60.    The Notice also directed Ms. Tapia to agree to vague directive like treating students with respect and dignity, using good judgment when interacting with students, acting in a professional manner while at work, and complying with the aforementioned Board Policies and Education Code section 220.

61.    At the September 30 meeting, the District also vocally directed Ms. Tapia "to withhold information and lie to parents about their student's name/gender/pronoun preference."

62.    The District also informed Ms. Tapia that she had to allow transgender students to use the bathroom or locker room that matched their preferred sex.

63.    School districts are given discretion when applying the Board Policies and Education Code section 220. JUSD interprets these sections to mean that all teachers must affirm a child's preferred gender and allow them to use the locker room or bathroom of their choice.

64.    The directives outlined in the Notice are hereinafter referred to as "the

9

1   Directives."

2   65.    The Directives were presented to Ms. Tapia in a take-it-or-leave-it

3   manner. Ms. Tapia had to comply with the Directives or risk losing her job.

4   66.    Following this meeting and the issuance of the Notice, Ms. Tapia took

5   a medical leave of absence and was absent from duty through December 2022.

6   67.    The Directives caused Ms. Tapia to suffer severe mental and emotional

7   anguish because she was torn between agreeing to conditions that caused her to

8   violate her religious beliefs or losing the job she worked her entire life for.

9   Consequently, she was unable to focus on her job.

10  **D. JUSD's Denial of Request for a Religious Accommodation**

11  68.    On or about December 19, 2022, Ms. Tapia, through her union

12  representative, informed the District that she could not comply with the Directives.

13  A true and correct copy of Ms. Tapia's letter is attached hereto as Exhibit C.



14  69.    Regarding Directive 1, Ms. Tapia stated, "Staying true to my faith and

15  beliefs, I can and will only refer to students by the name and gender/pronouns

16  provided by their parents/legal guardians on school paperwork during enrollment,

17  which is provided to me on my rosters/attendance sheets." *Id.*

18  70.    Regarding Directive 3, Ms. Tapia stated that she could not "refrain from

19  publicly posting content on [her] social media pages that adversely affects [her]

20  relationships with students" as she does not "have control over what a student can

21  find on social media and what they will decide to be affected by." *Id.*

22  71.    Regarding Directive 5, Ms. Tapia stated that she "serve[s], follow[s],

23  and work[s] for the Lord above all else." While Ms. Tapia does not force her

24  religious beliefs on anyone, consistent with her religious beliefs, she believes she

25  must always be "prepared with an answer for the hope [she has], for anyone who

26  comes asking." *Id.*

27  72.    Regarding the verbal directive, Ms. Tapia stated that she could not

28  "purposely lie and withhold information from parents about their child."

73.     On January 13, 2023, Ms. Tapia, her union representative, and Mr. Brooks participated in a meeting to determine whether accommodations or exemptions were available to Ms. Tapia. During this meeting, Mr. Brooks requested that Ms. Tapia submit accommodation requests.

74.     On or about January 16, 2023, Ms. Tapia responded to Mr. Brooks with the following potential accommodations:

1. To call students by the name listed on the school roster.

2. To transfer to Mira Loma Middle School.

3. The District require students to use the locker room that matches the sex on their birth certificate or provide a separate changing area for students who are transgender.

4. To transfer to another position in the District in which she would not interact with students.

75.     On or about January 18, 2023, the District determined that it could not accommodate Ms. Tapia's religious beliefs without violating California and federal law, "aimed at protecting students and providing *all* students, a discrimination and harassment free learning environment."

76.     The District scheduled a meeting for January 27, 2023 to determine whether Ms. Tapia could remain a District employee without infringing on her religious beliefs.

77.     On or about January 26, 2023, Ms. Tapia submitted a letter to the District which further explained her religious beliefs.

78.     In this letter, Ms. Tapia informed the District that lying to parents regarding their children's identity also conflicts with Board Policy 5131.9, which requires that District employees create and maintain a climate that encourages honesty.

79.     The District did not negotiate with Ms. Tapia in good faith to find an alternative accommodation, nor did the District suggest that no other

1   accommodation was available.

2       80.     The District had no legitimate reason to deny all of Ms. Tapia's

3   requested accommodations.

4       81.     The District's findings were not based on evidence or made in good

5   faith.

6       82.     First, the District provided no evidence that calling students by their

7   listed name on the school roster would impose a burden. The District did not

8   demonstrate that such an accommodation has or will disrupt school learning or

9   prevent JUSD from efficiently providing its educational services to the public.

10      83.     Similarly, the District did not demonstrate that transferring Ms. Tapia

11  to the middle school would impose a burden. The District assumed that Ms. Tapia's

12  requests would disrupt learning for transgender students at the middle school.

13      84.     The District also has no legitimate basis for allowing students to use the

14  locker room or bathroom that does not match their sex on their birth certificate.

15  Requiring students to use the bathroom and locker room that matches their sex on

16  their birth certificate would not interfere with the regular operations of the District.

17      85.     Finally, JUSD cannot show that Ms. Tapia has or will discriminate

18  against or harass students.

19      86.     Indeed, Ms. Tapia's teaching history demonstrates that she has created

20  a loving and inclusive environment for all students.

21      87.     Ms. Tapia would never discriminate or harass a student because of their

22  sexual orientation, gender, or race. Again, her religion requires her to love everyone

23  but to not affirm beliefs or behaviors that are antithetical to the Word of God.

24      88.     The District's decision to deny Ms. Tapia a religious accommodation

25  was arbitrary and discriminatory.

26      89.     Indeed, the Defendants were aware that this was discriminatory and

27  violated their own district policy.

28      90.     According to the District's Annual Notification to Employees, "The

12

Jurupa Unified School District does not discriminate on the basis of . . . religion . . . in any of its policies, procedures or practices . . . ."

91.   The Annual Notification to Employees also states, "No district employee shall be discriminated against or harassed by any coworker, supervisor, manager, or other person with whom the employee comes in contact in the course of employment, on the basis of the employee's actual or perceived . . . religious creed . . . ."

92.   Additionally, California state law prohibits religious discrimination in the educational context. *See* Cal. Educ. Code §§ 200, 220.

93.   The District has previously provided religious accommodations and exemptions. For instance, during March 2023, the District implemented an LGBTQ training. Several teachers requested an exemption because the questions required them to agree to statements that violated their religious beliefs.

94.   JUSD granted them an exemption even though it had previously stated the training was necessary to provide a safe and inclusive environment for all students.

**E. JUSD's Termination of Ms. Tapia's Employment**

95.   On January 30, 2023, the District released Ms. Tapia from employment because she was unwilling to agree to the Directives that violated her sincerely held religious beliefs. The District specifically stated that because it could not accommodate Ms. Tapia's religious beliefs, it had to release her.

96.   The Defendants were aware that their conduct was unlawful because they were discriminating against Ms. Tapia based upon her religious beliefs.

97.   The District's Annual Notification to Employees states, "Actions and practices identified as unlawful" include "[r]eligious creed discrimination based on an employee's religious belief or observance . . . or based on the district's failure or refusal to use reasonable means to accommodate an employee's religious belief, observance, or practice which conflicts with an employment requirement."

98.    The    District's    own    policies    note    that "[n]o employee who requests an accommodation for any protected characteristic listed in this policy shall be subjected to any punishment or sanction, regardless of whether the request was granted."

99.    After receiving the notice of her release, Ms. Tapia responded to the notice reiterating her religious beliefs regarding human sexuality and lying. She referenced Genesis 5:2 which states, "Male and female He created them, and He blessed them and named them man when they were created."

100.    She also referenced Proverbs 12:22 which states, "Lying lips are an abomination to the Lord, but those who act faithfully are his delight."

101.    Ms. Tapia told the District that her faith is the "very core" of who she is and that she "will always be ready to share the answer for the hope" she has with "anyone who comes asking, as stated . . . [she] must be prepared to do as a follower of Christ in 1 Peter 3:15."

**F. Ms. Tapia's Charge of Religious Discrimination with the EEOC**

102.    Ms. Tapia filed a complaint of religious discrimination with the Equal Employment Opportunity Commission (EEOC) on February 8, 2023.

103.    The U.S. Department of Justice issued a right-to-sue letter on March 20, 2023.

104.    Ms. Tapia has also sought a right-to-sue letter with California's Department of Fair Employment and Housing.

**FIRST CAUSE OF ACTION**

**Violation of the Free Exercise Clause of the**

**First Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

105.    Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs 1 through 104, as if fully set forth herein.

106.    The First Amendment's Free Exercise Clause provides that "Congress

1  shall make no law respecting an establishment of religion or prohibiting the free
2  exercise thereof."

3      107.   The First Amendment guarantees Ms. Tapia's right to freely exercise
4  her religion.

5      108.   Plaintiff's religious faith precludes her from complying with the
6  Directives.

7      109.   The Directives, on their face and as applied, impose a substantial
8  burden on Plaintiff's free exercise of religion.

9      110.   The Directives, on their face and as applied, violate Ms. Tapia's right
10  to free exercise of religion because they force her to forego her religious beliefs to
11  maintain public employment.

12      111.   The Directives, on their face and as applied, are not neutral and
13  generally applicable.

14      112.   The District has applied the Directives in a discriminatory manner. For
15  instance, the District allows other teachers to discuss their political opinions during
16  class and on their social media.

17      113.   The District's accommodation policy was not generally applicable
18  because, as the Supreme Court recently reaffirmed, a policy that provides a
19  "mechanism for individualized exemptions" is not generally applicable. *Fulton v.*
20  *City of Phila.*, 141 S. Ct. 1868, 1877 (2021).

21      114.   The District provides religious accommodations on an individualized
22  basis. The District follows no objective, particularized criteria.

23      115.   The Directives, on their face and as applied, constitute unconstitutional
24  conditions because they allow the District to deny Ms. Tapia public employment for
25  exercising her religious beliefs. *See Koontz v. St. Johns River Water Management*
26  *Dist.*, 570 U.S. 595, 604 (2013).

27      116.   The Directives, on their face and as applied, are not narrowly tailored
28  to meet any compelling government interest.

ADVOCATES
FOR FAITH & FREEDOM

117.   The District has no compelling reason to lie to or deceive parents or require teachers to refer to students by their preferred pronouns.

118.   The District has no compelling interest in enforcing its Directives to comply with California or federal law because the Directives are not required by California or federal law.

119.   The individual Defendants should have known that their conduct was unlawful because district policy prohibits employees from discriminating or harassing another employee on the basis of the employee's "actual or perceived . . . religious creed . . . ." Here, the Defendants were aware of the Plaintiff's religious beliefs and sought to compel her to violate her religious beliefs.

120.   As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief.

121.   Additionally, Plaintiff is entitled to nominal damages, compensatory damages against the individual Defendants in their individual capacity in an amount to be proven at trial, and attorneys' fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

### Violation of the Free Speech Clause of the
### First Amendment to the United States Constitution
### (42 U.S.C. § 1983)

122.   Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs 1 through 121, as if fully set forth herein.

123.   Pursuant to 42 U.S.C. § 1983, Ms. Tapia brings this claim against JUSD for acting under color of state law to deprive her of rights secured by the U.S. Constitution.

124.   Ms. Tapia's religious expression is fully protected under the First Amendment, which prohibits the government from "abridging the freedom of

speech." This prohibition applies to state and local governments through the Fourteenth Amendment.

125. The Directives, and their enforcement, compel Plaintiff's speech by requiring she use a child's preferred pronouns.

126. Using specific pronouns or affirming a child's perceived gender identity is neither curricular speech nor part of Plaintiff's official duties.

127. The Directives, and their enforcement, also gag Plaintiff's speech by prohibiting her from answering truthfully questions asked by parents about their child's gender identity.

128. The Directives, on their face and as applied, regulate Ms. Tapia's speech, including her religious speech, based on its communicative content, which is a content-based restriction and is presumptively unconstitutional.

129. Specifically, the District has ordered Ms. Tapia to refrain from sharing her religious beliefs on her social media or in the classroom.

130. JUSD has also engaged in unconstitutional viewpoint discrimination against Ms. Tapia, as the Directives single out viewpoints about gender identity that require Ms. Tapia affirm a child's preferred sex, even if it deviates from the child's biological sex.

131. The Directives, on their face and as applied, constitute unconstitutional conditions because they allow the District to deny Ms. Tapia public employment for exercising her religious beliefs. *See Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 604 (2013).

132. The Directives, on their face and as applied, are not narrowly tailored to meet any compelling government interest.

133. The Defendants have no legitimate, let alone compelling interest, in requiring Plaintiff to adhere to the District's own ideological beliefs on a controversial matter of public debate because a policy "'aim[ed] at the suppression' of views" is flatly prohibited. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019). This

ADVOCATES
FOR FAITH & FREEDOM

"lie[s] beyond the government's power," even when the goal is "[a]s compelling as the interest in preventing discriminatory conduct." *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 784, 792 (9th Cir. 2022).

134. The District has no compelling reason to lie to or deceive parents or require teachers to refer to students by their preferred pronouns.

135. The District has no compelling interest in enforcing its Directives to comply with California or federal law because the Directives are not required by California or federal law.

136. The Directives are underinclusive because JUSD has exempted individuals from them, including teachers and staff members. The Directives are overinclusive because they prohibit speech that does not "amount to harassing or discriminatory conduct." *Taking Offense v. State*, 66 Cal. App. 5th 696, 720 (2021).

137. The individual Defendants should have known that their conduct was unlawful because district policy prohibits employees from discriminating or harassing another employee on the basis of the employee's "actual or perceived . . . religious creed . . . ." Here, the Defendants were aware of the Plaintiff's religious beliefs and sought to silence her religious speech, in violation of district policy.

138. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief.

139. Additionally, Plaintiff is entitled to nominal damages, compensatory damages against the individual Defendants in their individual capacity in an amount to be proven at trial, and attorneys' fees under 42 U.S.C. § 1988.

ADVOCATES
FOR FAITH & FREEDOM

FIRST AMENDED VERIFIED COMPLAINT

**THIRD CAUSE OF ACTION**

**Violation of the Due Process Clause to the United States Constitution**

**(42 U.S.C. § 1983)**

140.   Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs 1 through 139, as if fully set forth herein.

141.   The Directives unconstitutionally restrict the ability of Plaintiff to engage in First Amendment activities.

142.   The Directives contain various terms and phrases that are impermissibly vague and ambiguous.

143.   The Directives permit unbridled discretion by permitting JUSD to determine what actions will warrant the suppression of speech.

144.   The Directives, on their face and as applied, encourage arbitrary enforcement. JUSD disciplines teachers pursuant to the Directives based upon their subjective interpretation as to what constitutes as discriminatory or harassing speech or speech that is not respectful.

145.   The individual Defendants should have known that their conduct was unlawful because district policy specifically prohibits district employees from discriminating "on the basis of . . . religion . . . in any of its policies, procedures or practices . . . ." Here, the Defendants' Directives directly targeted the Plaintiff's religious beliefs and practices and sought to suppress the Plaintiff's religious speech.

146.   District policy also prohibits employees from discriminating or harassing another employee on the basis of the employee's "actual or perceived . . . religious creed . . . ."

147.   As a direct and proximate result of Defendants' violation of the Due Process Clause, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief.

148.   Additionally, Plaintiff is entitled to nominal damages, compensatory



1  damages against the individual Defendants in their individual capacity in an amount

2  to be proven at trial, and attorneys' fees under 42 U.S.C. § 1988.

3  **FOURTH CAUSE OF ACTION**

4  **Violation of California's Fair Employment and Housing Act**

5  **(Cal. Gov't Code § 12940)**

6  149.    Plaintiff re-alleges and incorporates by reference the allegations in the

7  preceding paragraphs 1 through 148, as if fully set forth herein.

8  150.   FEHA makes it unlawful "[f]or an employer, because of the . . .

9  religious creed . . . of any person, to refuse to hire or employ the person or to refuse

10  to select the person for a training program leading to employment, or to bar or to

11  discharge the person from employment or from a training program leading to

12  employment, or to discriminate against the person in compensation or in terms,

13  conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

14  151.   FEHA requires employers to reasonably accommodate an employee's

15  religious beliefs and practices.

16  152.   The Defendant has discriminated against Plaintiff.

17  153.   The Defendant failed to engage in any reasonable negotiations to

18  determine if transfers or reassignments were available. Indeed, Ms. Tapia

19  specifically asked to transfer to another school or to another position where she

20  would have limited interaction with students.

21  154.   Even still, Defendant failed to offer reasonable accommodations.

22  Defendant did not, and cannot, demonstrate that providing any accommodations

23  would impose an undue burden.

24  155.   As a direct and proximate result of Defendants' violation of FEHA,

25  Plaintiff has suffered loss of employment and employment benefits, entitling her to

26  declaratory and injunctive relief and damages against the District.

27

28

**FIFTH CAUSE OF ACTION**

**Violation of Title VII**

**(42 U.S.C. § 2000e, *et seq.*)**

156.   Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs 1 through 155, as if fully set forth herein.

157.   Title VII of the Civil Rights Act of 1964 prohibits Defendant JUSD from discriminating against its employees because of their sincerely held religious beliefs. *See* 42 U.S.C. § 2000e-2(a).

158.   JUSD's decision to enforce its directives, including banning religious expression against only Ms. Tapia—and not other similarly situated employees who also engage in religious expression—constitutes disparate treatment under the Title VII of the Civil Rights Act of 1964.

159.   JUSD also directly discriminated against Ms. Tapia on the basis of her religion. JUSD issued directives at Ms. Tapia that targeted her religious expression on her social media pages and on school grounds.

160.   The District's conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(a).

161.   The District has also failed to engage in any meaningful interactive process with Plaintiff to determine if a reasonable accommodation is available.

162.   Ms. Tapia requested to refer to students by the information provided on official school records, transfer schools, or to work in a position that had limited interaction with students. Defendants did not, and cannot, demonstrate that providing these accommodations would impose an undue burden.

163.   The District's conduct violates 42 U.S.C. § 2000e-(j).

164.   As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered, and will suffer harm in the loss of her employment and/or employment benefits, entitling her to declaratory and injunctive relief and damages against the District.

FIRST AMENDED VERIFIED COMPLAINT

### SIXTH CAUSE OF ACTION

### Deprivation of Civil Rights Under 42 U.S.C. § 1983 (First Amendment Retaliation)

165.   Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs 1 through 164, as if fully set forth herein.

166.   This cause of action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United State Constitution.

167.   Clearly established law bars the government from retaliating against Americans for exercising their constitutional rights and from taking actions designed to deter people from exercising their constitutional rights.

168.   Ms. Tapia was engaged in protected speech when she was expressing her religious beliefs on her personal social media accounts and in her classroom. Her right to not affirm JUSD's beliefs on gender identity is also protected.

169.   The Defendants retaliated against Ms. Tapia by threatening her loss of employment if she did not comply with the District's Directives. The Directives were presented to her in a take-it-or-leave-it manner.

170.   The Defendants threatened Ms. Tapia with loss of employment and refused to grant her an exemption because of her protected religious expression.

171.   The individual Defendants should have known that their conduct was unlawful because district policy specifically prohibits district employees from subjecting another employee to punishment or sanction for requesting an accommodation for any protected characteristic, including religious beliefs.

172.   As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief. Additionally, Plaintiff is entitled to nominal damages, compensatory against the individual Defendants in their individual capacity damages in an amount to be proven at trial, and attorneys' fees under 42 U.S.C. §



1988.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.      Nominal damages for violation of her civil rights;

2.      Damages for Plaintiff in an amount to be proven at trial;

3.      A declaratory judgment that the District's Directives are unconstitutional;

4.      A declaratory judgment that the District's directives violate FEHA and Title VII;

5.      Temporary, preliminary, and permanent injunctive relief requiring the District to reinstate Plaintiff's employment;

6.      For costs, attorneys' fees and interest, as allowed by law; and

7.      For such other relief the Court determines is proper.

Respectfully submitted,

DATED:  August 3, 2023                    ADVOCATES FOR FAITH & FREEDOM

By: _Julianne Fleischer_____
      Julianne Fleischer, Esq.
      Attorneys for Plaintiff **Jessica Tapia**

1

**VERIFICATION**

2    I am a party to this action.  I am informed, believe, and on that ground allege

3  that the matters stated in the foregoing **FIRST AMENDED VERIFIED**

4  **COMPLAINT FOR DEPRIVATION OF THE FREE EXERCISE OF**

5  **RELIGION, DEPRIVATION OF THE FREEDOM OF SPEECH,**

6  **VIOLATION OF THE DUE PROCESS CLAUSE, VIOLATION OF**

7  **CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT, VIOLATION**

8  **OF TITLE VII AND FIRST AMENDMENT RETALIATION** are true. The

9  matters stated in the foregoing document are true and based upon my own

10  knowledge. I believe the matters based upon information and belief are also true.

11    I declare under penalty of perjury under the laws of the State of California that

12  the foregoing is true and correct.

13  Executed on ___Aug 3, 2023___, at ___Wildomar___, California.

14

15

16  
   Jessica Tapia (Aug 3, 2023 17:33 PDT)
   _____

17  Jessica Tapia

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED VERIFIED COMPLAINT